NOT DESIGNATED FOR PUBLICATION

No. 116,731

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
T.D.G. and M.G.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Opinion filed July 7, 2017.
Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*:  J.G., the natural father of two children, appeals the district court's termination of his parental rights. The Mother relinquished her parental rights. Although Father admitted he was an unfit parent at the time of the hearing, he disagrees that his unfitness would continue to the foreseeable future and that termination is in the best interests of his children. Agreeing with the district court, we affirm.

*Factual and Procedural Background*

In June 2015, the State filed a petition alleging that T.D.G. and M.G., born in 2010 and 2013 respectively, were children in need of care. The petition stated that the parents had several prior contacts with the Department for Children and Families (DCF) dating

back to 2013, as well as a history of drug use and criminal convictions. DCF workers who visited the home in August 2014 reported that they saw M.G. sucking on a bag containing methamphetamine.

In May 2015, the children's house had no electricity because the parents had not paid the bill and Father was seen trying to start a generator when DCF workers arrived. DCF workers saw a security camera near the front door. In August 2015, DCF workers observed that M.G. was wearing a diaper overflowing with feces that had been duct-taped onto her and that both children appeared to be malnourished. T.D.G. was frequently seen outside by himself, and neighbors had contacted DCF after he was seen walking in the street unsupervised. The workers repeatedly reported that the children were not bathed; they were wearing dirty, stained clothing; and they had dirty hair. The petition stated that the children had access to "bong water" and detailed concerns about possible use of the children for pornographic purposes.

Shortly after the children were removed from the home, T.D.G. had a hair follicle test that tested positive for amphetamine and methamphetamine. At the adjudication hearing on the Child in Need of Care (CINC) petition, Father tested positive for methamphetamine and oxycodone. He pleaded no contest to the State's allegations in the CINC petition, which included observations of malnourishment, lack of hygiene, failure to supervise, parental drug use, and possible sexual abuse of the children.

At the adjudication hearing, the district court adopted the permanency plan developed by St. Francis Community Services (SFCS) and ordered Father to do the following: complete a substance abuse evaluation and follow all recommendations, complete a clinical assessment and follow all recommendations, obtain employment and stable housing, complete parenting classes, complete budget and nutrition classes, complete random urinalysis tests (UAs) twice a month and complete hair follicle testing

every 90 days. Father admitted that he failed to complete any of those tasks in the first 7 months after the CINC finding.

At the first termination hearing in May 2016, Father admitted he was addicted to methamphetamine and had a history of drug use and convictions for possession. He admitted that he used methamphetamine on and off throughout the case, including on the Friday before the hearing. The district court ordered Mother and Father to submit to UAs before leaving court and to submit to hair follicle tests by noon the next day. They failed to do so. The district court held them in direct contempt for disobeying his order regarding the hair follicle tests, stating, "[o]bviously, there's [also] ramifications for this case because, you know, any Judge using common sense is probably going to see their failure to submit themselves as an indication that they would be positive." He imposed 30-day sentences but suspended the sentences until the end of the termination case.

Later in the hearing, Father admitted that he could easily be considered unfit. The district court entered a finding that Father was presently unfit but it reserved ruling on Father's likeliness to change in the foreseeable future. The district granted a 60-day continuance "to allow [Father] more time to complete court orders and demonstrate stability."

At the July 2016 hearing, the district court heard testimony from the following persons: Father; Mother; Connie Mayes, a master's level social worker and therapist; Heather Wood, the case manager; Christy Hannon, a social worker from SFCS; and a pastor who had given Father odd jobs and lined up a job opportunity that Father did not take. Their testimony covered Father's lack of housing and employment, his continued drug use, and his lack of progress on the tasks in his reintegration plan both before and after the May 2016 hearing. The district court found that Father was unfit, that his unfitness was unlikely to change in the foreseeable future, and that termination was in the best interests of the children. Father appeals this ruling.

3

*The Governing Law*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). It also lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c). The State may also rely on 1 or more of 13 statutory presumptions of unfitness outlined in K.S.A. 2016 Supp. 38-2271.

In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational factfinder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved in favor of the State.

Having found unfitness that is unlikely to change in the foreseeable future, the district court must then determine whether termination of parental rights is "in the best

4

interests of the child." K.S.A. 2016 Supp. 38-2269(g)(1). The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if (1) it rules in a way no reasonable judicial officer would under the circumstances, (2) it ignores controlling facts or relies on unproven factual representations, or (3) it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106; *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Father challenges only two factors:  the likelihood of change in the foreseeable future and the best interests of the children. We analyze these below, applying the different standards of review to each issue.

*Likelihood of Change in the Foreseeable Future*

The district court stated three statutory bases for its finding of unfitness and that Father's conduct or condition was unlikely to change in the foreseeable future:  (1) Father's use of intoxicating liquors or narcotics or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical mental or emotional needs of the children (K.S.A. 2016 Supp. 38-2269[b][3]); (2) Father's lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of the children (K.S.A. 2016 Supp. 38-2269[b][8]); and (3) Father's failure to carry out a reasonable plan approved by the court directed toward the integration of the children into his home (K.S.A. 2016 Supp. 38-2269[c][3]).

Father admits his addiction to methamphetamine but argues that no direct evidence showed that his addiction caused an inability to parent or showed that his unfitness would not change in the foreseeable future.

Testimony at the July 2016 hearing centered on Father's drug use and focused on his acts during the 60-day continuance which the district court granted to allow Father an opportunity to demonstrate a likelihood of change. Wood, the case manager, stated her concerns that Father still had positive UAs, that he had obtained housing 2 weeks before the hearing but the housing was inadequate for reintegration, and that Father had not been truthful about his drug use and driving without a license. She stated that his untruthfulness made it difficult to assess the safety of the children if they were returned to his custody. Wood also testified about Father's lack of progress on the tasks listed in the achievement plan she developed after the May hearing. Wood testified that during the case and specifically during the 60-day continuance, Father had not provided her with proof of employment; had not regularly submitted to UAs; had missed appointments on June 16, June 23, and July 5; and had two positive UAs. He did, however, have some negative UAs as well. Father admitted he had no negative hair follicle tests during the case; thus, all hair follicle tests were positive for methamphetamine.

On the first day of the hearing, Father testified that he "would go to the ends of the earth" for his kids, but when pressed on that point, he admitted that he did not want to repeat intensive drug treatment at an elevated level because it would be uncomfortable and more demanding on him. He explained the inconsistency by stating, "I'm not saving my child's life by going to treatment. It's—it's not the same ballpark." But he agreed that he understood that the reason he was being asked to go back to treatment was so that he could have his children returned to him. This testimony indicates that Father was unlikely to do what it took to make significant progress toward overcoming his addiction.

6

A parent's actions, not intentions, are the measure to be used in determining likelihood of change in the foreseeable future:

"Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008).

A parent's past behavior is a strong factor in predicting future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Father's admission that he has a serious drug addiction, his testimony that he did not want to reenter treatment even though he knew it was necessary to have his children returned to his care, his positive drug tests during the 60-day continuance, and his failure to find stable employment or adequate housing during the 60-day continuance provide clear and convincing evidence supporting the district court's finding that Father's conduct was unlikely to change in the foreseeable future.

*The District Court's Determination that Termination was in the Best Interests of the Children*

Upon a finding of a parent's unfitness, the district court must consider the best interests of the child—whether the child's physical, mental, or emotional health would best be served by the termination of parental rights. K.S.A. 2016 Supp. 38-2269(g)(1). We review the district court's decision on best interests of the children for an abuse of discretion. *In re M.H.*, 50 Kan. App. 2d 1162, 1175, 337 P.3d 711 (2014). A district court abuses its discretion only if it bases its decision on an error of fact or law or takes a view that no reasonable person would share. 50 Kan. App. 2d at 1175.

7

At the May 2016 hearing, after finding that the State had produced clear and convincing evidence of Father's "present unfitness," the district court reviewed evidence concerning the best interests of the children. It stated that by all reports, the visits had been going well and the children and Father had an obvious bond. At the visits, the children ran to the parents, the parents brought lunches for the children, and once bought each child a toy. But the visits had not progressed beyond 1- or 2-hour visits based at the facility because Father could not provide an adequate home environment for a home visit.

The district court was concerned that T.D.G.'s developmental delays could get worse if the Father-child bond were terminated at the first termination hearing. Accordingly, it withheld determination of best interests of the children and granted a 60-day continuance until July to allow Father to show that his unfitness was likely to change in the foreseeable future.

At the July 2016 hearing, the State showed that Father continued to use drugs during the 60-day continuance and during a program of drug treatment. The district court found that because Father had not shown successful progress toward the necessary change, it was in the best interests of the children to terminate Father's rights instead of waiting longer to see if Father would make changes.

Father argues that the State did not present any new evidence regarding best interests at the July hearing. However, the district court's order at the May hearing limited the issue for the July hearing to only proving unfitness for the foreseeable future. The decision concerning the best interests of the children was within the district court's discretion, based on the evidence it heard during the first termination hearing.

Father also argues that the district court abused its discretion by basing its decision on an error of fact because its factual findings supporting termination were not supported by clear and convincing evidence. Father fails, however, to identify evidence in the

8

record that weighs against the State's evidence of positive drug tests and reports by case workers. Further, Father admitted at the May hearing that he could easily be considered unfit at the time. After careful review of the record, we concluded above that clear and convincing evidence supported the State's allegations regarding unfitness as well as the likeliness of change in the foreseeable future. Thus, the district court did not commit an error of fact. Further, it based its decision on sound law, so there was no error of law. Nor does the evidence show that the district court took a view that no reasonable person would adopt. The district court's decision that termination, without further delay, was in the best interests of T.D.G. and M.G. was reasonable. It is in the children's best interests to have a parent who can avoid using drugs and work positively towards a goal. In light of the fact that the evidence supporting an unfitness finding also supports the district court's best interests findings, we find no abuse of discretion.

Affirmed.